UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

March 11, 2019

LETTER TO COUNSEL

    RE:   *Frank S. v. Commissioner, Social Security Administration*;
            Civil No. SAG-18-1796

Dear Counsel:

On June 18, 2018, Plaintiff Frank S. petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny his claims for Disability Insurance Benefits and Supplemental Security Income. ECF 1. I have considered the parties' cross-motions for summary judgment. ECF 14, 17. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Plaintiff's motion, grant the SSA's motion, and affirm the SSA's judgment pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Plaintiff protectively filed his claims for benefits in 2014, alleging a disability onset date of April 14, 2014. Tr. 164-74. His claims were denied initially and on reconsideration. Tr. 103-10, 113-16. A hearing was held on April 18, 2017, before an Administrative Law Judge ("ALJ"). Tr. 36-52. Following the hearing, the ALJ determined that Plaintiff was not disabled. Tr. 15-30. The Appeals Council denied review, Tr. 1-6, making the ALJ's opinion the final, reviewable decision of the SSA.

The ALJ determined that Plaintiff suffered from the severe impairments of "diabetes mellitus, lumbar spine disorder, and other unspecified arthropathies." Tr. 18. The ALJ determined that, despite his impairments, Plaintiff retained the residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasionally climb ramps/stairs, no climbing ladders, ropes or scaffolds, and occasionally balance, stoop, kneel, crouch and crawl.

Tr. 20. After considering the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform his past relevant work as a credit and loans collection supervisor, dispatcher and service clerk, and customer complaint service supervisor. Tr. 29-30. Accordingly, the ALJ determined that Plaintiff was not disabled. Tr. 30.

Plaintiff appeals the ALJ's decision, and raises several arguments on appeal: (1) that the ALJ failed to identify or evaluate Stage IV kidney disease at Step Two of the sequential evaluation; (2) that the ALJ assigned insufficient weight to the opinion of his treating nephrologist, Dr. Razi;

and (3) that the ALJ improperly evaluated Plaintiff's subjective assertions of disabling impairments by failing to consider his extensive work history. ECF 14-1 at 3-27. Each argument lacks merit for the reasons addressed below.

First, Plaintiff argues that the ALJ failed to identify or discuss his Stage IV kidney disease at Step Two. An ALJ is required to discuss each diagnosis that is supported by objective medical evidence in the claimant's record. *See Boston v. Barnhart*, 332 F. Supp. 2d 879, 885 (D. Md. 2004); *Albert v. Astrue*, Civil Action No. CBD-10-2071, 2011 WL 3417109, at *2-3 (D. Md. July 29, 2011). The question presented in this case is whether Plaintiff's kidney disease constitutes an independent diagnosis, versus a symptom Plaintiff experiences as a result of his diabetes. *See* Tr. 284 (describing his impairment as "diabetic nephropathy"). Similarly, the medical record demonstrates that Plaintiff suffers from neuropathy, but neuropathy is not independently considered as severe or non-severe in the Step Two discussion because it is a symptom of Plaintiff's diabetes. Arguably, in light of the evidence linking Plaintiff's kidney disease to the severe impairment of diabetes mellitus, the ALJ appropriately did not list kidney disease as an independent impairment.

Moreover, this Court has held that an ALJ's failure to consider the severity of a particular diagnosis at Step Two is harmless where the ALJ corrects his or her error by "fully consider[ing] the impact" of the neglected evidence when determining the claimant's RFC. *See Burroughs v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-1081, 2015 WL 540719, at *1 (D. Md. Feb. 9, 2015). In this case, the ALJ engaged in an extensive discussion of the medical records pertaining to Plaintiff's renal function, including extensive review of his nephrologist's treatment notes, Tr. 22, 24, 25, 27, and reports from some of his kidney-related lab testing, Tr. 22. In determining a claimant's RFC, the ALJ is required to consider all of the claimant's impairments, both severe and non-severe, in combination. *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); *Walker v. Bowen*, 889 F.2d 47, 49-50 (4th Cir. 1989). Because the ALJ engaged in a comprehensive discussion of Plaintiff's kidney impairment during the RFC analysis, the failure to deem that impairment "severe" or "non-severe" at Step Two is harmless.[1]

Second, Plaintiff contends that the ALJ assigned insufficient weight to the medical opinion from his treating nephrologist, Dr. Razi. ECF 14-2 at 8-24. The ALJ assessed Dr. Razi's opinion as follows:

> The treating source statement by Dr. Razi is given little weight. This checklist-style form appears to have been completed as an accommodation to the claimant and includes only conclusions regarding functional limitations without any rationale for those conclusions. The undersigned finds this evidence has no

---

[1] Plaintiff contends, in his reply, that the ALJ should have imposed kidney related limitations in the RFC assessment, but has not suggested what type of limitation the ALJ should have imposed. ECF 18 at 2. The ALJ thoroughly explained his consideration of the kidney-related evidence, and a review of the medical records does not indicate any additional RFC limitations that might have been needed to address renal symptoms. *See, e.g.*, Tr. 27 ("Regarding kidney function, nephrology follow-ups show the claimant essentially denies having any complaints or concerns and renal function is stable.") (internal citations omitted). Plaintiff's citation to general information regarding potential symptoms of Stage IV kidney disease, ECF 14-2 at 6 n.1, is unpersuasive in light of a medical record suggesting few, if any, related symptoms.

probative value because it is not supported by any objective evidence. In fact, the majority of the claimant's physical examinations have been essentially normal. For example, despite some deficiencies noted at times, he is otherwise shown with intact sensation (Exs. 2F; 10F/3; 20F/12), no degree of interference of locomotion or with use of the fingers, hands or arms (Ex. 2F), 5/5 strength in the bilateral lower extremities (Ex. 10F/3), normal gait and station (Exs. 2F; 15F/6, 9; 16F/4, 9, 14; 19F/6, 9, 12), and full range of motion without pain (Ex. 20/F12-14).

Tr. 29. The ALJ's assessment complied with the legal obligation that the ALJ provide an explanation for rejecting an opinion from a medical source. 20 C.F.R. §§ 404.1527, 416.927. The ALJ acknowledged that Dr. Razi is a treating source, but also cited to specific medical evidence contradicting the opinions Dr. Razi espoused on his opinion form. The citations, and the other discussion of Dr. Razi's treatment notes throughout the opinion, address two of the factors that the ALJ is required to consider under 20 C.F.R. §§ 404.1527(c), 416.927(c), supportability and consistency. While the lack of any explanation for a conclusion on a medical form is not inherently fatal, in cases, like this one, where support for the treating physician's conclusions is not readily evident from the medical record, the lack of explanation on a "check-box" form certainly affects its supportability. As to consistency, the opinions in Dr. Razi's evaluation not only contradict the exhibits the ALJ cited, but also the other treatment notes from Dr. Razi that the ALJ discussed elsewhere in the opinion. *See, e.g.*, Tr. 22 ("Nephrology notes by Dr. Razi shows [sic] that on December 23, 2014 the claimant denied any specific complaints . . . [t]he claimant was assessed with stable renal function."); Tr. 24 ("Nephrology follow-up on May 5, 2015 demonstrates that the claimant had no complaints. His physical examination was essentially normal, including normal gait and station."); *id.* ("Nephrology follow-up on August 11, 2015 shows the claimant had no complaints . . . . Physical examination was essentially normal including normal gait and station."); Tr. 25 ("Nephrology follow-up on November 10, 2015 notes the claimant had no related complaints. His physical examination was essentially normal including normal gait and station."); *id.* ("Nephrology follow-up on May 31 2016, again notes the claimant had no complaints. . . . Physical examination remained unremarkable, including intact gait and station."); Tr. 27 ("Nephrology follow-up in January 24, 2017 shows the claimant with no complaints and his examination essentially normal . . . . Extremity exams revealed no edema and normal range of motion. He had no focal musculoskeletal or sensory defects."). In light of the substantial evidence to support the assignment of "little weight" to Dr. Razi's opinion form, under the criteria in 20 C.F.R. §§ 404.1527(c), 416.927(c), I find no error in the ALJ's conclusion.

Finally, Plaintiff argues that the ALJ erred by failing to consider his exemplary work history while assessing the validity of his subjective complaints. ECF 14-2 at 24-27. Plaintiff cites to some cases from outside the Fourth Circuit, and one opinion from the Eastern District of North Carolina, suggesting that a claimant's credibility would be bolstered by a strong work history or attempts to return to gainful employment. ECF 14-1 at 25-26. Without question, SSA policy requires that the ALJ consider "information about [a claimant's] prior work record," in addition to other factors, in evaluating the claimant's subjective complaints of disabling symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). In this case, the ALJ heard testimony that Plaintiff had worked his way up through the ranks at Comcast and had been employed there for 18 years. Tr. 39. The ALJ summarized Plaintiff's hearing testimony regarding the difficulties of his lengthy commute to work, and the specific difficulties he alleged with performing his required work tasks as a result of his health issues. Tr. 21-22 (noting that Plaintiff testified that he was

3

"losing focus, working more slowly" and "unable to write or type as he once was"). In a later section of the opinion, the ALJ also expressly considered Plaintiff's past work as a credit and loans collection supervisor, dispatcher and service clerk, and customer complaint service supervisor, and evaluated the time frame in which it was performed and the duration of the work in order to determine that each position qualified as substantial gainful activity. Tr. 30. Moreover, the ALJ also evaluated other factors relevant to Plaintiff's subjective complaints, including his statements about his symptoms, evidence from his medical examinations, Plaintiff's daily activities, and the nature of his treatment. *See, e.g.*, Tr. 27 ("The claimant's treatment has been conservative, routine, with minimal objective findings"); Tr. 28 ("[W]hile the claimant testified that he uses a cane to ambulate, there is no evidence in the record that the cane is medically necessary for daily ambulation or that he has a gait abnormality or significant weakness in his lower extremities, which would substantiate the need for a cane on a daily basis."); *id.* ("Despite alleging constant symptoms from neuropathy in hands and feet at hearing [sic], the record does not reference significant or ongoing objective findings in that regard, which tends to detract from his allegations."); *id.* ("Moreover, clinic notes reflect numerous occasions on which the claimant did not specify any particular complaint, which contrasts with the current claim of ongoing, disabling symptoms since the alleged onset date."); *id.* ("Further, the claimant's daily activities during the period at issue, caring for his personal needs, preparing simple meals, driving, shopping for groceries, handling his own finances, and completing household chores such as laundry, changing bed linen, and cleaning bathroom [sic], without assistance, suggests a greater level of focusing and physical functioning than alleged.") (internal citation omitted). While I concur that, ideally, "it behooves an ALJ to clearly articulate the role a plaintiff's work history plays in his credibility analysis," *Locker v. Berryhill,* Case No. 2:17-cv-342, 2018 WL 4232889, at *8 (E.D. Va. July 6, 2018), the failure to adhere to that standard does not warrant remand where, as here, there is express evaluation of substantial evidence relating to the other relevant factors, and some evidence that the ALJ considered the plaintiff's work history. Remand is therefore unwarranted.

For the reasons set forth herein, Plaintiff's motion for summary judgment, ECF 14, will be DENIED and Defendant's motion for summary judgment, ECF 17, will be GRANTED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing order follows.

                                                       Sincerely yours,

                                                       /s/

                                                       Stephanie A. Gallagher
                                                       United States Magistrate Judge